UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CHRISTOPHER ADAM DOLLAR, | Case No. 2:13-cv-01952-JCM-GWF |
| Petitioner, | ORDER |
| v. | |
| GREGORY SMITH, et al., | |
| Respondents. | |

Christopher Adam Dollar's 28 U.S.C. § 2254 habeas corpus petition is before the court for final disposition on the merits. Respondents filed an answer to the petition, and Dollar filed a reply and request for an evidentiary hearing. The request for an evidentiary hearing is granted, and the court has reviewed Dollar's proffered new evidence. As discussed below, the petition is denied.

**I.     Procedural History and Background**

As set forth in this court's order on respondents' motion to dismiss, in November 2010, Dollar and two co-defendants were charged by way of criminal complaint with one count of conspiracy to commit robbery, two counts of burglary while in possession of a firearm, two counts of attempted robbery with use of a deadly weapon, and one count of robbery with use of a deadly weapon (exhibit 1).[1]  Dollar pled guilty to one count of conspiracy to commit robbery and one count of robbery. Exh. 3. The state district court sentenced Dollar to 19 to 48 months for conspiracy and a consecutive term of 60 to 180

---
[1] Unless otherwise noted, exhibits referenced in this order are exhibits to respondents' motion to dismiss, ECF No. 21, and are found at ECF No. 23. Exhibits filed by petitioner are found at ECF Nos. 9-13 and shall be referred to as petitioner's exhibits.

1

months for robbery, with 104 days credit for time served. Exh. 8. The court entered the judgment of conviction on February 7, 2011. Exh. 9. The Nevada Supreme Court affirmed his convictions. Exh. 14.

In January 2012, petitioner filed a pro per motion for modification of harsh sentence requesting that the court modify his sentence to 12 to 30 months and 24 to 60 months, consecutive, which was the term parole and probation had recommended. Exh. 16. The state district court denied the motion. Exh. 17.

In May 2012, petitioner filed a proper person postconviction petition for writ of habeas corpus in state district court. Exh. 18. The state district court conducted a limited evidentiary hearing at which Dollar's plea counsel testified regarding whether he had had reason to question Dollar's competency and/or to seek a competency hearing. Exh. 22. The state district court denied the petition, finding that Dollar received effective assistance of trial and appellate counsel. Exh. 24. The Nevada Supreme Court affirmed. Exh. 25.

Dollar dispatched his federal petition for writ of habeas corpus on or about October 14, 2013 (ECF No. 5). This court appointed counsel, and Dollar filed a counseled, first-amended petition (ECF No. 16).

On August 26, 2015, this court granted respondents' motion to dismiss and dismissed the petition without prejudice because it was wholly unexhausted (ECF No. 30). Dollar appealed, and the Ninth Circuit Court of Appeals reversed and remanded, concluding that this court should have treated the petition as technically exhausted and procedurally defaulted and should have analyzed whether Dollar could demonstrate cause and prejudice to excuse the default (ECF No. 37).

In the meantime, in May 2014, Dollar returned to state court and filed a motion to modify or correct an illegal sentence, or in the alternative a postconviction petition seeking resentencing based on a due process violation (ECF No. 26, exh. A). Dollar presented the purported new evidence (which is now also before this court) with his

2

motion. The state district court denied the petition/motion, finding that Dollar failed to demonstrate cause and prejudice to excuse the procedural bars of the untimely and successive petition and that the sentencing judge was not mistaken about Dollar's past criminal record (ECF No. 27, exh. C).  The Nevada Supreme Court affirmed the denial of the petition.  Nevada Supreme Court Case No. 67314.

After the court of appeals' remand in this case, this court directed the parties to file an answer to the federal petition and any reply and to raise and/or renew any arguments regarding whether, in light of *Martinez v. Ryan*, 566 U.S. 1 (2012), Dollar could demonstrate cause and prejudice to excuse the procedural default (ECF No. 41). Respondents filed their answer (ECF No. 43).  Dollar filed a document that he styled as a response to the answer and a request for a *Martinez* hearing regarding whether Dollar's procedural default of his ineffective assistance of counsel (IAC) at sentencing claim should be excused (ECF No. 56).

## II. Request for an Evidentiary Hearing Pursuant to *Martinez*

The United States Supreme Court held in *Martinez*,

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez*, 566 U.S. at 17.  Dollar requests an evidentiary hearing in order to demonstrate cause and prejudice to excuse the procedural default of his IAC at sentencing claim (ECF No. 56, pp. 15-16).  He urges that this court may consider the evidence he now presents under *Cullen v. Pinholster*, 563 U.S. 170 (2011), *Dickens v. Ryan*, 740 F.3d 1302 (2014), and *Martinez*.  The request for an evidentiary hearing is granted.  The court accepts as authentic the proffered evidence, which is comprised of records from Clark County School District, the Social Security Administration, Dollar's high school, and a document entitled Psychiatric Review Technique.  Pet. exhs. 42-46. Below, the court discusses this evidence along with the rest of the state-court record.

3

**III. Legal Standards & Analysis**

    **a. Procedural Default and *Martinez***

"Procedural default" refers to the situation where a petitioner in fact presented a claim to the state courts but the state courts disposed of the claim on procedural grounds, instead of on the merits. A federal court will not review a claim for habeas corpus relief if the decision of the state court regarding that claim rested on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991).

The *Coleman* Court explained the effect of a procedural default:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986). The procedural default doctrine ensures that the state's interest in correcting its own mistakes is respected in all federal habeas cases. *See Koerner v. Grigas*, 328 F.3d 1039, 1046 (9th Cir. 2003).

To demonstrate cause for a procedural default, the petitioner must be able to "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray*, 477 U.S. at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991).

To demonstrate a fundamental miscarriage of justice, a petitioner must show the constitutional error complained of probably resulted in the conviction of an actually innocent person. *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). This is a narrow exception, and it is reserved for

4

extraordinary cases only. *Sawyer v. Whitley*, 505 U.S. 333, 340 (1992). Bare allegations unsupplemented by evidence do not tend to establish actual innocence sufficient to overcome a procedural default. *Thomas v. Goldsmith*, 979 F.2d 746, 750 (9th Cir. 1992).

The Court in *Coleman* held that ineffective assistance of counsel in postconviction proceedings does not establish cause for the procedural default of a claim. *Coleman*, 501 U.S. at 750. In *Martinez*, the Court established a "narrow exception" to that rule. As noted above, the Court explained that a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, petitioner had no counsel or counsel in that proceeding was ineffective. 566 U.S. at 17. The Ninth Circuit has provided guidelines for applying *Martinez*, summarizing the analysis as follows:

> To demonstrate cause and prejudice sufficient to excuse the procedural default, therefore, *Martinez* . . . require[s] that Clabourne make two showings. First, to establish "cause," he must establish that his counsel in the state postconviction proceeding was ineffective under the standards of *Strickland [v. Washington*, 466 U.S. 668 (1984)]. *Strickland*, in turn, requires him to establish that both (a) post-conviction counsel's performance was deficient, and (b) there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different. Second, to establish "prejudice," he must establish that his "underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."

*Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014) (citations omitted).

Here, Dollar urges that he can demonstrate cause and prejudice to excuse the default of his IAC at sentencing claim (ECF No. 56). First, Dollar did not have counsel for his state postconviction proceedings; thus, Dollar has demonstrated cause under *Martinez*.

The question, therefore, is whether Dollar can demonstrate prejudice by demonstrating that his underlying IAC at sentencing claim is substantial. The parties

5

agree that in this procedural posture, this is essentially an adjudication of the merits of the claim.

### b. **State-court Proceedings**

When Dollar was first arrested, he wrote a letter to the court. Pet. Exh. 5. He opened: "I know this may not mean much, but I feel compelled to write you this letter of apology and show my remorse . . . ." He asks for forgiveness, states that he'll comply with any "stipulation" the court sets because he loves his children and urges that he will prove to the court and to society that he was worthy of a second chance. *Id.*

At the arraignment, Dollar responded to the court's questions, stating that he had graduated high school and could read, write, and understand English. Pet. Exh. 8, p. 5. He indicated that he understood the charges to which he was pleading guilty, that no one forced him to plead guilty and that he pleaded guilty of his own free will. He also stated that he understood the sentencing range for each count, that sentencing is strictly up to the court, and that no one could promise him probation, leniency, or special treatment. He answered affirmatively when asked if he had freely and voluntarily signed the plea agreement and if he understood that he was giving up certain constitutional rights. He said he pled guilty because in truth and in fact he committed the acts constituting robbery and conspiracy to commit robbery. *Id.* at 7-11.

After Dollar entered into the plea agreement, his counsel submitted a sentencing memorandum and supplemental sentencing memorandum. Exhs. 10, 11. The supplemental memorandum included 7 letters from family attesting to Dollar's good character and asking that he receive probation so that he could return to his children. It also included numerous requests submitted by Dollar to attend various programs while he was in jail awaiting sentencing.

The state court conducted sentencing for the four co-defendants in January 2011. Exh. 8. At the outset of the proceedings the court denied Dollar's counsel's request for a continuance in order to assess whether he was eligible for boot camp. The State

noted that the two male co-defendants had previous felony convictions and argued that the three male co-defendants should receive the same sentence of 6 to 15 years. Dollar had no adult convictions but had been on juvenile probation. *See also* pet. exh. 47. The prosecutor stated that Dollar had a $7,000 debt and that he enlisted the other defendants to help him with the robberies. The State argued "with Mr. Dollar, obviously although he has a limited criminal history is equally culpable, he's the motive, he's the person that gets the crime rolling, he's the person that elicits the help." Exh. 8, p. 7.

Dollar spoke at sentencing. *Id.* at 10. He stressed that he had no excuse for his poor choice but that he intended to move forward with his life and asked for the opportunity to demonstrate that he had learned something over the more than 3 months that he had been in jail by receiving probation. Dollar's counsel emphasized that Dollar was only 20 years old and that this was his first adult offense. *Id.* at 11-13. He urged "I don't see how anyone could think that my client, just because he said he had a $7,000 debt, would be the motivating individual in this case when he's the youngest of the three and he's also the one with no past adult criminal record." Counsel noted that Dollar had a job waiting for him at WalMart. Counsel stated: "It should be noted that he was involved in special education all of his life, but he worked hard enough and was persistent enough that he did earn a high school diploma." Counsel pointed out the many letters of recommendation that people wrote on Dollar's behalf, asserting that he was of good character and that this was an aberration. Counsel concluded by stating that Dollar's main problem was a drug problem that needed to be addressed then at 20 years of age and urged the court to impose 12 to 30 months on the conspiracy and 24 to 60 months on the robbery, concurrent, and to give him probation so that he could go to drug court.

The state district court sentenced the three male defendants to 19 to 48 months and 60 to 180 months, consecutive. *Id.* at 20.

7

In January 2012, Dollar filed a pro per motion for modification of a harsh sentence. Exh. 16. He asked the court to modify his sentence at least to parole and probation's recommendation of 12 to 30 months and 24 to 60 months, consecutive. He argued that the sentencing court considered misleading information that worked to his extreme detriment. At sentencing, the court had stated that Dollar was not eligible for boot camp. But Dollar argued in this motion that the considerations for boot camp are how many prior felony convictions the offender has and whether he is eligible for probation. He also asserted that you are not eligible for boot camp if you are convicted of robbery with a deadly weapon, but you may be eligible for the offense of robbery. *Id.*

In May 2012, Dollar filed a pro per state postconviction habeas corpus petition. Exh. 18. In September 2012, the state district court conducted an evidentiary hearing limited to whether Dollar's plea counsel was ineffective in not arranging for further evaluation of Dollar's competency. Exh. 22, pp. 6-14. Dollar's plea counsel Dan Winder testified as follows. He grew up with Dollar's father and to his recollection the father had retained him. He recalled that at the outset he had a conversation with Dollar's father and a bail bondsman who also grew up with Winder and they opined that Dollar was a little "slow" and easily influenced and had probably just gone along with the co-defendants. *Id.* at 11. In response to the state's questioning, Winder stated:

> A: So, I was prepared to evaluate for myself whether it was necessary to have him – whether he was having mental health issues. So, prior to speaking to him, I already gathered some information about his past and about his education history. I understand that he was in special ed during periods of time in school. So, I made sure that I communicated with him accordingly. We did not have any trouble communicating. I actually found him to be more articulate that what was represented to me. He seemed to very much understand what was going on and as I always do, I allow my clients to make the choice whether to accept the plea bargain or go forward to trial.
>
> Q: So, prior to even recommending any plea bargain in this case to Mr. Dollar, the idea of a competency issue was on your mind, it sounds like?
>
> A: That's correct.

8

> Q: But after meeting with Mr. Dollar, you deemed that it was not actually an issue?
>
> A: I didn't believe that he fit within the criteria to legally require me to request a psychological evaluation.
>
> THE COURT: Now, is it fair to say that you have a number of clients who may be – were in special ed or of lower IQs?
>
> A: Yes . . . . I would say that at least fifty percent of my clients –I'd say eighty percent of them have drug problems and those who have drug problems tend to have cognitive problems. And then there's a high percentage who also have been involved with special ed or have lower IQs. And it's only where we get to the level that they're border line retarded on the IQ scale or lower that I will request – or if they don't understand the proceedings going on or they can't assist me in defending them in the case that I request a psychological evaluation . . . . So, at no point in my discussions with Mr. Dollar did I feel that he was one that was entitled to – needed to have an evaluation or didn't understand what was going on or couldn't assist me in making – in the decision-making process about the Defendant's case.
>
> THE COURT: Okay. So in other words, even though maybe he had been – had some IQ issues, so to speak a lower IQ, you didn't feel it was low to the point where it would be low enough where you would need to have him assessed and that could be utilized by you; is that fair to say?
>
> A: That's correct. That's fair to say.

*Id.* at 11-13.

Winder stated that at no time prior to Dollar's entry of his plea or through sentencing did any issues arise that caused Winder to feel that there might be any questions regarding Dollar's competency. Winder noted that it was Dollar who decided to continue the original sentencing hearing because he wanted to present more information to the judge in support of probation. *Id.* at 13. Winder also recounted that a different judge presided over sentencing. Winder moved for a continuance when he saw the presiding judge because "we all knew at that point that [Dollar] was going to receive a higher sentence than we anticipated," which the judge denied. *Id.* Winder

9

opined that all four defendants received harsher sentences than they deserved, but especially Dollar.

Dollar also questioned Winder at the hearing. *Id.* at 15-30. Winder responded that he evaluated Dollar based on his experience regarding whether a client understands the proceedings, the charges, etc. He also had reviewed letters from Dollar's mother and girlfriend and various other friends and stated that they all "say very nice things" and further stated that they presented those letters to the court. Winder agreed that he had been informed that Dollar was "slow and . . . had problems in school" and stated that in this case he did not conduct further investigation beyond speaking with Dollar's family and friends. Winder stated:

> So, even to this day, nobody's presented me with evidence for me to present to the court indicating that you didn't – your mental health or your psychological state at the time of sentencing required additional consideration by the court.

*Id.* at 18. Winder testified that to his recollection Dollar's father had stated that Dollar was slow and had some problems at school. But when he spoke with Dollar, Dollar understood the proceedings and the plea bargain. Dollar wanted to go to trial, and he and Winder discussed that.

Near the end of the evidentiary hearing, the judge stated that she had noted to her law clerk that Dollar had already demonstrated by his questions that he was much smarter than most defendants, and she also stated that Dollar did a better job with his examination of Winder than some new lawyers she had observed. *Id.* at 26.

Dollar pressed Winder as to whether he had had cause to go further in his investigation. Winder responded:

> A: I didn't. After speaking with you and knowing what the law of competency is for criminal court here, I did not believe you required an evaluation and that you were going to be – I didn't have any hint that you were going to be incompetent to go forward with your case nor did I want you to have to be locked up at Lakes Crossing wasting time there just to come back and go forward with your case. So, I don't believe there's

10

anything more I could have done. You probably do need some mental health assistance that doesn't rise to the level of legal incompetency that's required by this court so that you'd be locked up in a facility.

*Id.* at 27. At the conclusion of the evidentiary hearing, the judge explained that the hearing was not about whether the sentencing judge gave Dollar too harsh a sentence. She found that Winder's testimony belied the claim that he was ineffective for failing to further investigate Dollar's competency or need for a competency determination. Denying the petition, she noted to Dollar

> Now you may have been influenced by these other young men that you committed these crimes with . . . . But that does not absolve you from responsibility in this case and that certainly isn't the kind of thing that should send you up to Lakes Crossing for some kind of psychiatric or psychological evaluation. . . . you're standing here arguing with me . . . the proof is in the pudding . . . . you know, you're not that low standard. So, it's denied.

The state district court entered the order denying the petition on November 15, 2012. Exh. 24.

### c. Dollar's Proffered New Evidence

Dollar now presents records from Clark County School District, the Social Security Administration, his high school, and a document entitled Psychiatric Review Technique. Exhs. 42-45. He presented these documents to the state district court in his May 2014 motion to modify or correct an illegal sentence, or in the alternative a postconviction petition seeking resentencing based on a due process violation (ECF No. 26, exh. A).

The Clark County School District records reflect that in grades 9-11, Dollar received 2 A grades, a few Bs and Cs, but mostly Ds and Fs. Exh. 42. He was in special education from kindergarten through high school and was diagnosed with a specific learning disability. The school reports stated that Dollar had low average social understanding and fell in the high probability range for Asperger's Disorder. *Id.* at 22. The report of the Clark County School District Student Support Services Division team stated that it was the:

11

> consensus of team that Chris is in control of behaviors identified as weaknesses and therefore accountable to general school rules . . . . there was a severe discrepancy between his predicted and actual achievement . . . these discrepancies are not primarily the result of a visual, hearing or motor impairment, mental retardation, a serious emotional disturbance, or environmental, cultural difference of economic disadvantage.

*Id.* at 24-25.

A 2007 Clark County School District assessment states that his basic reading skills and written language skills were assessed as average for a person his age (17) and grade level; his math skills were below average. Exh. 44, p. 8. His individualized educational program (IEP) for the 2007-2008 school year provided that he may use a calculator as needed in math, and that in all classes, assignments could be shortened, or alternate assignments given, and he was allowed extra time to complete assignments. *Id.* at 13. That same school year the IEP also reflects that Dollar was in a regular classroom with supplementary aids and services. *Id.* at 14.

These records plainly demonstrate that Dollar struggled in school and received special education throughout. However, at the time he participated in these robberies he had a job at WalMart, and he was a father who expressed great remorse in writing to the court and begged to be allowed a chance at probation in order to be with his family. The state postconviction evidentiary hearing reveals that Dollar very capably examined his plea counsel on the stand. His counsel testified credibly that Dollar's family told him that Dollar was slow, but that Dollar handled himself a lot better than his counsel expected. Counsel also noted that Dollar thoughtfully participated and strategized in his defense; it was Dollar's idea to seek a continuance of sentencing in order to marshal more support for probation. Again, perhaps most striking is that Dollar did a very competent job of questioning his counsel—to the extent that the court commented on how well he was doing. The records that Dollar now presents do show more specifically Dollar's learning difficulties as he was growing up. However, Dollar's demeanor and the way he handled himself during sentencing and appeals completely belie his argument

12

that had the court had these records at sentencing he would have been given a lighter sentence.

The state-court record reveals that the district judge viewed the three men as equally culpable. When Dollar asked for a chance on probation, the court responded by noting that Dollar had had probation before as a juvenile. Exh. 8, p. 10. Dollar's counsel argued that they were not equally culpable, that Dollar had a significant drug problem, that he was in special education throughout school and that far from being the ringleader he merely followed the lead of the other, older two men in committing the robberies. *Id.* at 11. When Dollar's counsel mentioned the letters of support, the court interjected: "No, no, no, people with good character don't do what they did." *Id.* at 12.

Under *Martinez*, Dollar has demonstrated cause to excuse the procedural default because he had no counsel in his state postconviction proceedings. However, this court concludes that Dollar's proffered new evidence fails to demonstrate that his claim that counsel rendered ineffective assistance at sentencing is "substantial." *See, e.g.*, *Clabourne*, 745 F.3d at 377. That is, Dollar has failed to demonstrate prejudice. The IAC claim, therefore, is procedurally barred from federal habeas review.

### d. IAC Claim Alternatively Fails on the Merits

As Dollar has not shown that the IAC claim is substantial, it alternatively necessarily fails on the merits. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

13

different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted).

This court recounts the state-court record at length because it reveals that Dollar cannot demonstrate prejudice. Nothing in the documents that Dollar now presents indicates such serious intelligence or competency issues that would give rise to a reasonable probability that, but for counsel's unprofessional errors in failing to investigate further, the result of the sentencing would have been different. *Strickland*, 466 U.S. at 687. Accordingly, the petition is denied in its entirety.

**IV.     Certificate of Appealability**

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or

14

wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct.  *Id.*

Having reviewed its determinations and rulings in adjudicating Dollar's petition, the court finds that none of those rulings meets the *Slack* standard.  The court therefore declines to issue a certificate of appealability for its resolution of Dollar's petition.

**V.     Conclusion**

**IT IS THEREFORE ORDERED** that the request for a hearing pursuant to *Martinez v. Ryan* (ECF No. 56) is **GRANTED** as set forth in this order.

**IT IS FURTHER ORDERED** that the petition (ECF No. 16) is **DENIED** in its entirety.

**IT IS FURTHER ORDERED** that a certificate of appealability is denied.

**IT IS FURTHER ORDERED** that respondents' motion for extension of time to file a response to the request for a hearing (ECF No. 59) is **GRANTED** *nunc pro tunc*.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly and close this case.

DATED:  August 9, 2019.

JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE